UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JASON MATTHEWS,

          Plaintiff,

v.

ADR BILLING LLC,
EPPSSA LLC,
DRS PROCESSING LLC,
KNOX BROTHERS HOMES LLC,
DARRON RAY TAYLOR,
EBONY TERRELL MINTER,
BERNARD N. WESCOTT,
DARRYL TYRONE MILLER, and
CHEREKA LYNETTE TINSLEY,

          Defendants.
_____/

## COMPLAINT

### I.    Introduction

1.      Plaintiff is a victim of credit identity theft, whose stolen personal and financial information was used to create a counterfeit credit card account and fake debt. Defendants are debt collectors and credit identity thieves who acquired and used the stolen information and counterfeit account to contact and falsely threaten plaintiff with litigation, prosecution and other adverse consequences, and extort the payment of money from plaintiff.

2.      Defendants have violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and Driver's Privacy Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq*.

3.      Defendants, along with other entities and individuals to be identified in discovery, are involved in a large, elaborate, and ongoing scheme to contact consumers across the country and falsely threaten litigation, prosecution and other adverse consequences unless the consumers pay money to defendants to supposedly satisfy counterfeit, paid, or time-barred debts. Defendants' scheme is sometimes known as "The Shakedown" or "The Shake."

4.      These schemes are epidemic and are operated by thousands of entities located in and around Los Angeles, California, Jacksonville and Miami, Florida, Buffalo, New York, Atlanta, Georgia, Charlotte, North Carolina, and Rock Hill, South Carolina.

5.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015.

6.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft. See also, Consumer Financial Protection Bureau v. Douglas MacKinnon et al., U.S.

2

District Court, Western District of New York (Buffalo), Case No. 1:16-cv-00880FPG, filed November 2, 2016, in which the government alleges that the defendants cheated thousands of consumers out of millions of dollars by running the same type of scam that is described in this complaint.

7.     The Identity Theft and Assumption Deterrence Act, 18 U.S.C. § 1028, makes it a felony to "knowingly transfer, possess, or use, without lawful authority, a means of identification of another person with the intent to commit, or to aid or abet, or in connection with, any unlawful activity that constitutes a violation of Federal law . . . ." The act defines a "means of identification" to include an individual's "name, social security number, date of birth," and other information.

## II.    Jurisdiction

8.     The Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331.

## III.   Parties

9.     Plaintiff Jason Matthews is an adult, natural person. Mr. Matthews is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Mr. Matthews is a "person" as the term is defined and used in the DPPA.

10.    Defendant ADR Billing LLC ("ADR"), also known a ADR Processing, also known as Acknowledge Debt Resolutions, is an active South Carolina limited liability company, organized on or about April 21, 2016 by defendant Darron Ray Taylor. The registered agent for ADR is Darron Ray Taylor, 1466 Mahaffey Line Drive, Lancaster, South Carolina 29720. ADR uses interstate commerce and the mails in a business the principal purpose of which is the

collection of debts. ADR regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ADR is a "debt collector" as the term is defined and used in the FDCPA.

11.     ADR actually operates defendants' credit identity theft and debt collection scam from a call center located at 1811 Sardis Road North, Suite 205, Charlotte, North Carolina 28270.

12.     In efforts to conceal defendants' true business location, defendants have filed documents with various governmental agencies, claiming to be doing business at various residential addresses, including: 7540 Kuck Road, Mint Hill, North Carolina 28227 (the current residential of defendant Darron Ray Taylor); 14231 Richmond Park Avenue, Charlotte, North Carolina 28277; and 1466 Mahaffey Line Drive, Lancaster, South Carolina 29720.

13.     On October 10, 2019, defendants registered through GoDaddy.com, LLC, the internet domain www.acknowledgedebtresolutions.com. The registrant's identifying information will need to be obtained from GoDaddy.com, LLC via subpoena in discovery. The domain links to an active website that describes "Acknowledge Debt Resolutions," also known as "ADR Processing," as a "debt collection agency located [at 110 Trade Cross, 1st Floor, Bluffton, SC 29909.]" However, the address is merely a virtual office rented by defendants from Regus. The website provides the contact email address admin@acknowledgedebtresolutions.com and telephone number 888-538-2401. The website was designed and set up by First Page Media and its owner, Christopher Papa, 5325 Sheridan Drive, #444, Buffalo, New York 14221.

14.     ADR through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

15.     Defendant EPPSSA LLC ("EPPSSA") is an active North Carolina limited liability

company, organized on or about April 11, 2019 by defendant Chereka Lynette Tinsley, and doing

business at 1811 Sardis Road North, Suite 205, Charlotte, North Carolina 28270, telephone

number 704-361-7349. The registered agent for EPPSSA is Chereka Lynette Tinsley, 1811

Sardis Road North, Suite 205, Charlotte, North Carolina 28270. EPPSSA uses interstate

commerce and the mails in a business the principal purpose of which is the collection of debts.

EPPSSA regularly collects or attempts to collect, directly or indirectly, debts owed or due or

asserted to be owed or due another. EPPSSA is a "debt collector" as the term is defined and used

in the FDCPA.

16.     EPPSSA through its employees and agents directly and indirectly participated in

the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

17.     Defendant DRS Processing LLC ("DRS") is an active North Carolina limited

liability company, organized on or about February 4, 2014 by defendant Darryl Tyrone Miller.

DRS in multiple government filings claims to be doing business at 10130 Mallard Creek Road,

Suite 300, Charlotte, North Carolina 28262, but the address is merely a virtual office rented by

defendants. DRS actually does business at 1811 Sardis Road North, Suites 205 and 218,

Charlotte, North Carolina 28270, in space shared with defendants ADR and EPPSSA. DRS uses

interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. DRS regularly collects or attempts to collect, directly or indirectly, debts owed or due

or asserted to be owed or due another. DRS is a "debt collector" as the term is defined and used in

the FDCPA.

18.     According to the internet website maintained by the North Carolina Industrial

Commission, DRS Processing LLC, 1822 Sardis Road North, Suite 218, Charlotte, North

Carolina 28270, currently maintains Workers Compensation Insurance for DRS employees

5

through Travelers Indemnity Company of America, Policy Number UB3L7598912042G, effective January 8, 2020. Apparently, none of the other defendants named in this complaint maintain any Workers Compensation Insurance policy, suggesting that the call center employees are employed by DRS.

19.     Defendant Knox Brothers Homes LLC ("KBH") is an active North Carolina limited liability company, organized on or about July 17, 2017 by defendant Darryl Tyrone Miller. DRS in multiple government filings claims to be doing business at 1811 Sardis Road North, Suite 205, Charlotte, North Carolina 28270, in space shared with defendants ADR, EPPSSA and DRS. The KBH annual report filed April 8, 2020 with the State of North Carolina states that the company's "Nature of Business" is "DRS Processing LLC," and that the company's "Principal Office Telephone Number" is 980-825-8825, which is registered to DRS, doing business as Miller Stark Klein & Associates. KBH uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. KBH regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. KBH is a "debt collector" as the term is defined and used in the FDCPA.

20.     KBH through its employees and agents directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

21.     ADR Billing LLC, EPPSSA LLC, DRS Processing LLC and Knox Brothers Homes LLC are sometimes collectively referred to as the "Corporate Defendants" in this complaint.

22.     Defendant Darron Ray Taylor is a natural person, age 54, purportedly residing at 7540 Kuck Road, Mint Hill, North Carolina 48227. Mr. Taylor has used multiple email addresses when operating his debt collection scam, including: admin@acknowledgedebtresolutions.com,

6

acknowledgeddebtresolutions@gmail.com , darrontaylor00@gmail.com,

darrontayloro1@gmail.com and drtaylor1@gmail.com. Mr. Taylor sometimes uses telephone

number 704-449-2986 when operating his debt collection scam. Mr. Taylor is an owner, director,

officer, member, manager, employee and agent of defendants ADR Billing LLC and EPPSSA

LLC. Mr. Taylor uses interstate commerce and the mails in a business the principal purpose of

which is the collection of debts. Mr. Taylor regularly collects or attempts to collect, directly or

indirectly, debts owed or due or asserted to be owed or due another. Mr. Taylor is a "debt

collector" as the term is defined and used in the FDCPA.

23.    Mr. Taylor currently uses the alias "Tommy Thompson" when communicating

with consumers while operating his credit identity theft and debt collection scam.

24.    Mr. Taylor when extorting the payment of money from consumers routinely

makes multiple false threatens, including that he will: "process the paperwork for court," "freeze

all of the consumer's accounts," "seize all of the consumer's assets," "freeze everything that the

consumer owns," "render the consumer's motor vehicles," "file a judgment against the consumer

under Article 42-16," "file a levy against the consumer's name and Social Security Number," and

serve the consumer's employer with a "garnishment of the consumer's wages."

25.    Mr. Taylor (a) created the collection policies and procedures used by the

Corporate Defendants and their employees and agents, in connection with their common efforts

to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of

the Corporate Defendants, (c) oversaw the application of the collection policies and procedures

used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved

and ratified the tactics and scripts used by the Corporate Defendants and their employees and

agents, to collect debts from consumers, including the tactics and scripts that were used to

attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

26.    Mr. Taylor directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

27.    Defendant Ebony Terrell Minter is a natural person, age 46, purportedly residing at 1466 Mahaffey Line Drive, Lancaster, South Carolina 29720. Ms. Minter has used multiple email addresses when operating her debt collection scam, including: ebonyminter7@yahoo.com. Ms. Minter sometimes uses telephone number 980-474-5737 when operating her debt collection scam. Ms. Minter is an owner, director, officer, member, manager, employee and agent of defendants ADR Billing LLC and EPPSSA LLC. Ms. Minter uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Minter regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Minter is a "debt collector" as the term is defined and used in the FDCPA.

28.    Ms. Minter previously operated her debt collection scam through Standard Procedure Solutions LLC, a South Carolina limited liability company, organized on or about April 6, 2015, and purportedly doing business at 114 Williams Street, Suite 209, Lancaster, South Carolina 29720. The registered agent for Standard Procedure Solutions LLC was Ebony Terrell Minter, 1466 Mahaffey Line Drive, Lancaster, South Carolina 29720.

29.     Ms. Minter (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

30.     Ms. Minter directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

31.     Defendant Bernard N. Wescott is a natural person, age 59, purportedly residing at 3981 Riverbank Drive, Orangeburg, South Carolina 29118. Mr. Wescott is an employee and/or agent of defendant ADR Billing LLC.  Mr. Wescott uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Wescott regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Wescott is a "debt collector" as the term is defined and used in the FDCPA.

32.     Mr. Wescott (a) created the collection policies and procedures used by the

Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

33.     Mr. Wescott directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

34.     Defendant Darryl Tyrone Miller is a natural person, age 52, purportedly residing at 5934 Brightstar Valley Road, Mint Hill, North Carolina 28227. Mr. Miller has used multiple email addresses when operating his debt collection scam, including: dmiller00199@gmail.com. Mr. Miller sometimes uses telephone number 704-293-4204 when operating his debt collection scam. Mr. Miller is an owner, director, officer, member, manager, employee and agent of defendant DRS Processing LLC. Mr. Miller uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Miller regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr.

Miller is a "debt collector" as the term is defined and used in the FDCPA.

35.     Mr. Miller (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

36.     Mr. Miller directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

37.     On October 29, 2018, Mr. Miller gave deposition testimony in the matter of *Cascade Capital, LLC et al. v. DRS Processing LLC,* U.S. District Court, Western District of North Carolina, Charlotte Division, Case No. 3:17-cv-00470-RJC-DSC. Mr. Miller testified that he was the owner and operator of DRS, and that from February 2016 to the present, Chereka Lynette Tinsley managed the day-to-day debt collection activities at DRS. Mr. Miller also testified that money received by DRS was paid over to operate KBH.

38.     Defendant Chereka Lynette Tinsley is a natural person, age 48, purportedly residing at 119 Forest Street, Apartment B, Greenville, South Carolina 29601; 6000 Country Walk Drive, Apartment G, Charlotte, North Carolina 28212; or 119 Duckett Court, Rock Hill, South Carolina 29730. Ms. Tinsley is an member, manager, employee and agent of defendants ADR Billing LLC, EPPSSA LLC, DRS Processing LLC and Knox Brothers Homes LLC. Ms. Tinsley uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Ms. Tinsley regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Ms. Tinsley is a "debt collector" as the term is defined and used in the FDCPA.

39.     Ms. Tinsley (a) created the collection policies and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of the Corporate Defendants, (c) oversaw the application of the collection policies and procedures used by the Corporate Defendants and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by the Corporate Defendants and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Mr. Matthews as stated in this complaint, (e) ratified the unlawful debt collection practices and procedures used by the Corporate Defendants and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by the Corporate Defendants and their employees and agents, in attempts to collect an alleged debt from Mr. Matthews as stated in this complaint.

12

40.     Ms. Tinsley directly and indirectly participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

41.     On August 22, 2018, the United States of America filed a four-count indictment against non-parties Laurence A. Sessum and Jacqueline Dianne Okomba for Fraudulent Debt Collection Conspiracy, Wire Fraud, Conspiracy to Commit Money Laundering, and Destruction of Objects and Records. *USA v. Okomba et al.,* U.S. District Court, Western District of North Carolina (Charlotte), Case No. 3:18-cr-00292-RJC-DSC. According to the government, from 2013 through early 2017, Mr. Sessum and Ms. Okomba operated a fraudulent debt collection scheme through a business called Direct Processing, LLC, cheating consumers out of at least $6,171,189.66. Mr. Sessum obtained account lists in a secondary market from vendors selling out-of-statute accounts that were unenforceable, already had been bought and sold multiple times and included account that had been settled or discharged in bankruptcy. After obtaining the lists, Mr. Sessum used an auto-dialer to robo-call victims and had his collectors falsely threaten consumers with litigation, lien, garnishments, arrest, and prosecution in efforts to extort money from the victims.

42.     According to the government, Mr. Sessum and Ms. Okomba operated Direct Processing, LLC at 1811 Sardis Road, Suites 214 and 235, Charlotte, North Carolina 28207.

43.     According to the government indictment: "To further disguise the identity of [Direct Processing, LLC, Sessum and Okomba], Sessum directed others to establish nominee bank accounts to pay operational and other expenses associates with the fraudulent debt collection company. For example, Sessum directed others to set up nominee bank accounts under the names . . . Standard Procedure Solutions [and] ADR Billing" with the signatories being

Sessum employees, defendants Ebony Terrell Minter and Darron Ray Taylor. *USA v. Okomba et al.*

44.     According to the government, defendants Ebony Terrell Minter and Darron Ray Taylor were employees and agents of Mr. Sessum and Ms. Okomba, and directly participated in Mr. Sessum's and Ms. Okomba's criminal debt collection scheme.

45.     On November 18, 2019, Sessum was sentenced to a term of imprisonment of 135 months, to be followed by a term of supervised release, and Okomba was sentenced to a term of imprisonment of 72 months, to be followed by a term of supervised release. *USA v. Okomba et al.* (Doc. 111)

46.     On December 30, 2019, the court entered a Money Judgment and Preliminary Order of Forfeiture, for the forfeiture of funds held in numerous bank accounts, including:

   a)     "Bank of America Account 1777, held in the name of ADR Billing LLC, listing Darron Ray Taylor as a signatory (Trial Ex. 4);"

   b)     "Bank of America Account 6083, held in the name of ADR Billing LLC, listing Darron Taylor as a signatory (Trial Ex. 4a);" and

   c)     "PNC Account 1944, held in the name of Standard Procedure Solutions LLC, listing Ebony Minter as a signatory (Trial Ex. 7)."

*USA v. Okomba et al.* (Doc. 108).

47.     On June 25, 2020, the court entered an Order, requiring Mr. Sessum to self-report to the Bureau of Prisons no later than September 29, 2020 to begin serving his eleven years and four months sentence for Fraudulent Debt Collection, Wire Fraud, Money Laundering and Obstruction. *USA v. Okomba et al.* (Doc. 157).

14

48.     It will need to be determined in discovery whether Mr. Sessum has participated in the efforts to collect an alleged debt from Mr. Matthews that are described in this complaint.

49.     Defendants have used multiple telephone numbers to operate their credit identity theft and debt collection scam, including: 216-672-0842; 704-361-7349; 704-449-2986; 704-469-5522; 833-626-3397; 833-710-0218; 888-358-2401; 888-538-2401; and 941-866-8333. Defendants currently receive their telephone service through a VoIP provider named Vaspian, LLC, 266 Oak Street, Buffalo, New York 14203. Defendants' subscriber information, additional telephone numbers, and other information will need to be acquired from Vaspian, LLC  in discovery.

50.     Defendants' employees and agents have used multiple aliases to operate their credit identity theft and debt collection scam, including: Tommy Thompson; Jim Stewart; and Robin Jones.

51.     Defendants own, control and use a Merchant Account established in the name of "ADR Billing LLC," also known as "ADR Billing," telephone number 888-358-2401, located in Charlotte, North Carolina, to receive credit card and debit card payments from their victims. Money deposited in the Merchant Account is shared among and distributed to the defendants named in this lawsuit, their employees and agents, and perhaps others. The application that was filed by defendants with the Acquiring Bank and Payment Processor or ISO to create the Merchant Account, as well as the related monthly account statements and other account records, will need to be obtained from the Acquiring Bank and Payment Processor or ISO via subpoena in discovery, so that plaintiff can identify the other entities that receive distributions of money from the Merchant Account and are involved in defendants' debt collection scam.

52.     The use of the Merchant Account by defendants, and their employees and agents, to violate multiple federal and state laws, and to commit fraud and extortion, violates the terms of the contracts between defendants and the Acquiring Bank, Visa and MasterCard, and defendants payment processor, and disqualifies defendants from having a Merchant Account.

53.     Plaintiff is proceeding against defendants collectively under a common enterprise theory, under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." *F.T.C. v. Tax Club, Inc.*, 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or a "maze of interrelated companies," exists, courts consider "the pattern and framework of the whole enterprise." *Delaware Watch Co. v. F.T.C.*, 332 F.2d 745, 746 (2d Cir. 1964). Although no one factor is controlling, relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." *Tax Club, Inc.*, 994 F. Supp. 2d at 469 (citation omitted); *F.T.C. v. Consumer Health Benefits Ass'n*, No. 10-CV-3551(ILG), 2011 WL 3652248, *5 (E.D.N.Y. Aug. 18, 2011). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. *F.T.C. v Wyndham Worldwide Corp.*, No. 13-1887(ES), 2014 WL 2812049, *5 (D. N.J. June 23, 2014) (citing *F.T.C. v. Direct Benefits Grp.*, No. 11-1186, 2013 WL 3771322, *18 (M.D. Fla. July 18, 2013)).

54.     All defendants, along with other companies, employees and agents to be identified in discovery and named as additional defendants in this lawsuit, are intricately bound together and combine their efforts in a joint and common enterprise and use concerted attempts to collect

debts allegedly owed by consumers throughout the United States. Defendants and the other entities operate collectively and together, in such as way that they are collecting debts for the benefit of each other, and making each participant jointly and severally for the unlawful acts of each of the other participants.

55.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

56.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth*

*Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

## IV.    Facts

57.    In or about September of 2008, plaintiff Jason Matthews obtained and used a line of credit to purchase goods and services for personal, family and household purposes. In connection with that account, Mr. Matthews's private, personal and financial information, including Mr. Matthews's Social Security Number, date of birth, residential address, telephone numbers, and banking information, was compromised, stolen and unlawfully used to create a counterfeit credit card account (supposedly issued by Continental Finance, with the Account No. 5206054260258072), and a related, counterfeit, allegedly unpaid debt.

58.    The perpetrators included Mr. Matthews's counterfeit account in multiple portfolios containing thousands of other counterfeit credit card accounts, and then sold the portfolios to, or otherwise placed the accounts with, multiple criminal enterprises across the country, to be used to contact and threaten consumers with litigation, prosecution and other adverse consequences, in efforts to extort the payment of money from the identity theft victims.

59.    Upon information and belief, one of persons that may have been involved in the creation of the portfolios of counterfeit accounts is a person with the initials BRB, residing in South Carolina, but that will need to be determined through discovery.

60.    Mr. Matthews denies owing any money to Continental Finance or any other entity in connection with the account.

61.    A Bank Identification Numbers or "BIN" is the initial four to six numbers that appear on a credit card. The BIN is a part of a numbering system developed by the American National Standards Institute to uniquely identify the financial institution that issues a specific

credit card.

62.     The BIN (520605) for Mr. Matthews's counterfeit account is the BIN for

"Classic" MasterCard credit cards, issued by The Bank of Missouri and serviced by Continental

Finance Company.

63.     According to The Bank of Missouri/Continental Finance Company, Mr. Matthews

has never had a credit account with The Bank of Missouri/Continental Finance Company with

the number 5206054260258072.

64.      According to The Bank of Missouri/Continental Finance Company, Mr.

Matthews has never had any credit account with The Bank of Missouri/Continental Finance

Company.

65.     According to The Bank of Missouri/Continental Finance Company, there has

never been a credit account issued by The Bank of Missouri/Continental Finance Company with

the number 5206054260258072.

66.     According to The Bank of Missouri/Continental Finance Company, Mr.

Matthews's supposed credit card account, number 5206054260258072, is counterfeit.

67.     In or before January 2020, an entity named Liberty Solutions & Associates, LLC

("LSA"), and its related entities, somehow acquired a portfolio of counterfeit accounts that

included Mr. Matthews's counterfeit account, along with Mr. Matthews's stolen personal and

financial information.

68.     In January 2020, LSA's employees and agents contacted Mr. Matthews by

telephone, falsely stated that Mr. Matthews owed $535.00 in connection with the counterfeit

account, and falsely threatened Mr. Matthews with litigation, prosecution and other adverse

consequences, in efforts to coerce the payment of money from Mr. Matthews.

69.    In February 2020, Mr. Matthews hired an attorney to file a lawsuit against LSA, its related entities, and their employees and agents, for violating the FDCPA, DPPA and other laws.

70.    In February 2020, Mr. Matthews entered into a settlement agreement with LSA and resolved his claims, pre-suit.

71.    On July 13, 2020, the Federal Trade Commission filed a lawsuit against LSA and others for running a credit identity theft and debt collection scam. *FTC v. National Landmark Logistics LLC et al.,* U.S. District Court, District of South Carolina (Rock Hill), Case No. 0:20-cv-02592-JMC. The government raided the defendants and is in the process of having the operation put into a receivership.

72.    Despite the foregoing, Mr. Matthews personal and financial information was obtained by another credit identity theft and debt collection scam operation, as described below.

73.    On March 5, 2020, employees and agents of an entity named Zenco Collections LLC and others, doing business as "Premier Holdings Group," communicated with Mr. Matthews, falsely stated that Mr. Matthews owed an unpaid balance of $2,263.81 in connection with an unpaid credit card debt to "Continental Finance Banking Corporation, Account No. 5206054260258072," falsely accused Mr. Matthews of various crimes, and falsely threatened Mr. Matthews with litigation, prosecution and other adverse consequences, unless Mr. Matthews paid $527.37 money to the callers. On May 5, 2020, Mr. Matthews filed a lawsuit against the callers, Zenco Collections LLC, Zenco Portfolio Management Inc., Premier Holdings Group, Adam Michael Pasternak, Stephen Gray McFayden, Stuart Adam Hollingsworth, Deville Asset

Management Ltd, and others, alleging violations of the FDCPA, DPPA and other laws. *Jason*

*Matthews v. Zenco Collections LLC et al.,* U.S. District Court, Western District of Michigan,

Case No. 1:20-cv-390.

74.     Despite the foregoing, and as described below, the defendants named in this

complaint are the most recent group of credit identity thieves and debt collection scam operators

to obtain and use Mr. Matthews's stolen personal and financial information to contact and falsely

threaten Mr. Matthews with litigation, prosecution and other adverse consequences, in efforts to

extort the payment of money from Mr. Matthews to supposedly satisfy a counterfeit account and

non-existent debt.

75.     On July 23, 2020, defendants placed a call from telephone number 941-866-8333

to Mr. Matthews's cellular telephone and left the following message on Mr. Matthews's voice

mail: "Your name and Social Security Number have come up in an investigation in our office.

Please give us a call back at 833-710-0218."

76.     On July 23, 2020, Mr. Matthews placed a return call to telephone number 833-

710-0218. The call was answered by defendants' female employee and agent with the words

"Processing. How may I assist you?" Mr. Matthews provided defendants' employee and agent

with his name and cellular telephone number. Defendants' employee and agent identified herself

as "Latonya Green with ADR Processing." In the ensuing conversation, defendants' employee

and agent made the following statements to Mr. Matthews:

a)      "You have a complaint here in our office."

b)      Mr. Matthews's "Case Number" is "2020-57477."

b)      "This in regard to a line of credit you took out through Continental

Finance, and they are stating that you have an outstanding balance with them at this time, and they did retain us to get your final payment in this matter. Just wanting to know whether you would like to resolve this involuntarily or not."

c) "Payments were made on this account from 2008 to 20101. You have not made any payment on this account since 2010."

d) The balance I have here right now is $1,527.37."

Mr. Matthews asked for the account number and was then transferred to defendants' employee and agent who identified himself as Jim Stewart. In the ensuing conversation, defendants' employee and agent made the following statements to Mr. Matthews:

e) "This account is a Surge MasterCard, card number, first six digits, 520605."

f) "The last collection agency you spoke to was two years ago regarding the case. They explained to you there was a balance that was left. You explained to them that you was going to pay it, but never paid it."

g) "We are basically the middle parties. We are finalizing the case. It is a balance that's being processed as a judgment. So before we process it, we try to at least get your final intent of what you want to do. Is it something you want to handle voluntarily, or involuntarily in court?"

h) "You have two options. They offer you an out-of-court settlement to resolve it or they offer you to pay a hardship towards the balance. The one time deal out-of-court settlement they are offering you today if it's paid

22

today is going to be $625.25 to pay it off. Or you can pay hardship in six

payments of $254.56 for six payments until the balance is paid."

i)      The name of our company is "ADR Processing" also known as

"Acknowledge Debt Resolutions."

Mr. Matthews stated that after he got out of work later that day, he would call Mr. Stewart to

further discuss the matter.

77.      On July 23, 2020, Mr. Matthews placed another call to telephone number 833-

710-0218 and spoke with defendants' employee and agent identified who identified himself as

Mr. Stewart. Mr. Matthews stated that he was not interested in paying money to defendants

because of the age of the alleged debt. Mr. Stewart responded, "Gotcha, so you'd rather that

judgment being processed against you! Thank you for calling me back."

78.      On July 24, 2020, in response to defendants' false threats of litigation, prosecution

and other adverse consequences, and solely for the purpose identifying and suing the entities who

had acquired Mr. Matthews's stolen personal and financial information, and made the false

threats, Mr. Matthews authorized a debit card payment to defendants in the amount of $75.00.

The payment was facilitated by defendants' employees and agents who identified himself as Mr.

Stewart.

79.      On July 24, 2020, defendants caused Mr. Matthews's debit card payment of

$75.00 to be transferred to defendants' Merchant Account established in the name "ADR Billing

LLC," also known as "ADR Billing," telephone number 888-358-2401, located in Charlotte,

North Carolina. According to the debit card's issuing bank, the payment posted to defendants'

Merchant Account on July 27, 2020. According to the debit card's issuing bank, defendants'

falsely ran the payment as an "In Person" transaction.

80.     On July 24, 2020, Mr. Matthews received an email from defendants using the address admin@acknowledgedebtresolutions.com. The email stated "Your card has been charged by ADR Billing llc. Below is your receipt of payment." The receipt falsely described the transaction as a "Credit Card Sale." The email originated from the IP address 209.239.233.125 which is registered to a payment processor named GOR Corporation, doing business as USAePay, which provides defendants with merchant payment processing services. Defendants' use of the payment processing services of USAePay to process the payment of money obtained from consumers through fraud and extortion violates the terms of service of the contract between defendants and USAePay and disqualifies defendants from using USAePay to process payments for defendants and defendants' Merchant Account. A copy of the email is attached to this complaint as Exhibit A.

81.     On July 29, 2020, Mr. Matthews received an email from defendants using the address admin@acknowledgedebtresolutions.com. The email stated "Here are the documents in regards to the settlement agreement we offered you. Please sign and send back. Authorization form has two signatures and initials top and bottom. If you have any questions please feel free to contact us at 833-626-3397. Best Regards, Robin Jones, ADR, Administrative Assistant, 833-626-3397." Attached to the email were three one-page documents. Mr. Matthews refused to sign any of the documents. A copy of the email and documents are attached to this complaint as Exhibit B.

82.     The above-described threats and representations made by defendants and defendants' employees and agents were false and part of a scripted and unlawful debt collection

practice that is ongoing and is currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, extortion, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained account and personal information.

83.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

84.     Defendants and their employees and agents falsely represented that Mr. Matthews owed money in connection with a counterfeit account.

85.     Defendants and their employees and agents falsely represented and inflated the amount of Mr. Matthews's alleged debt.

86.     Defendants and their employees and agents falsely represented that Mr. Matthews owed a debt that is not owed.

87.     Defendants and their employees and agents falsely represented the identity of the entity to whom the alleged debt is owed.

88.     Defendants and their employees and agents failed to provide the identity of the entity to whom the alleged debt is owed.

89.     Defendants and their employees and agents falsely represented that they are attorneys and a law firm.

90.     Defendants and their employees and agents wrongfully obtained and wrongfully used information related to a counterfeit account, as well as Mr. Matthews's personal and financial information, in an effort to coerce the payment of money from Mr. Matthews.

91.     Defendants and their employees and agents falsely represented and falsely implied

that lawyers were involved in the efforts to collect the alleged debt.

92.     Defendants and their employees and agents falsely represented and falsely implied that lawyers would become involved in the efforts to collect the alleged debt.

93.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit was going to be filed against Mr. Matthews to collect the alleged debt.

94.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Mr. Matthews to collect the alleged debt.

95.     Defendants and their employees and agents falsely represented that Mr. Matthews had committed fraud.

96.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews had committed a crime.

97.     Defendants and their employees and agents falsely represented and falsely implied that Mr. Matthews's name and Social Security Number were "under investigation."

98.     Defendants and their employees and agents falsely represented and falsely implied that a judgment was going to be entered against Mr. Matthews.

99.     Defendants and their employees and agents falsely represented and falsely implied that defendants are attorneys and a law firm, hired by their client, Continental Finance, to collect the debt from Mr. Matthews.

100.    Defendants did not intend to file a lawsuit against Mr. Matthews in any court in efforts to collect the alleged debt.

101.    Even if Mr. Matthews did owe the alleged debt, the debt would be judicially unenforceable by operation of the applicable statute of limitations. Stated differently, the account

and alleged debt are time-barred.

102.    Defendants and their employees and agents wrongfully threatened to file a lawsuit against Mr. Matthews to collect a time-barred debt.

103.    No defendant has ever filed any lawsuit against any consumer in any court to collect an alleged debt.

104.    The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

105.    The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

106.    The FDCPA states that it is unlawful for a debt collector to place a telephone call without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

107.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the debt collector is vouched for or affiliated with the United States or any State.  15 U.S.C. § 1692e(1).

108.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

109.    The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

110.    The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that any individual is an attorney or that any communication is from any attorney. 15 U.S.C. § 1692e(3).

111.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

112.    The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

113.    The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that the consumer committed a crime or other conduct in order to disgrace the consumer. 15 U.S.C. § 1692e(7).

114.    The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

115.    The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. § 1692e(10).

116.    The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

117.    The FDCPA states that it is unlawful for a debt collector to falsely represent or

imply that documents are legal process.  15 U.S.C. § 1692e(13).

118.    The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

119.    The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

120.    The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

121.    Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(1), (2)(A), (2)(B), (3), (4), (5), (7), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

122.    The FDCPA requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the required information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing the information mandated by 15 U.S.C. § 1692g(a).

123.    Defendants and their employees and agents failed to timely send to Mr. Matthews a notice containing the information required by 15 U.S.C. § 1692g(a).

124.    Each defendant and each defendant's employees, managers, owners, agents, affiliates and co-conspirators had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

125.    Defendants and their employees, managers, owners, agents, affiliates and co-

conspirators each have intentionally and wilfully violated the FDCPA.

126.    The FDCPA states in part, "It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

127.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

128.    In connection with efforts to collect an alleged debt from Mr. Matthews, defendants obtained and used personal information regarding Mr. Matthews from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

129.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

130.     The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

131.     The DPPA states:

>   (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.
>
>   (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

132.     The DPPA also states:

>   "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

133.     The DPPA also states:

>   A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

134.     The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

135.     Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Mr. Matthews.

136.     Defendants used the database to obtain, disclose and use personal information

31

regarding Mr. Matthews.

137.    Defendants made a false representation to the provider of the database to obtain personal information regarding Mr. Matthews that was derived from motor vehicle records.

138.    Alternatively, the entity that obtained Mr. Matthews's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Mr. Matthews that was derived from motor vehicle records.

139.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

140.    Defendants knowingly obtained, disclosed and used Mr. Matthews's personal information, obtained from motor vehicle records, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

141.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Mr. Matthews's personal information obtained from the database.

142.    No defendant had Mr. Matthews's consent, permission, authorization or waiver to obtain Mr. Matthews's personal information from the database.

143.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

144.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

145.    Defendants intentionally and wilfully violated the DPPA.

146.    Each defendant was aware, or should have been aware, of the unlawful debt

collection practices being used by the other defendants to collect alleged debts.

147.    As an actual and proximate result of the acts and omissions of defendants and their employees and agents, plaintiff has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which he should be compensated in an amount to be established at trial.

## V.     Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

148.    Plaintiff incorporates the foregoing paragraphs by reference.

149.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)    Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)    Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

150.    Plaintiff incorporates the foregoing paragraphs by reference.

151.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against each defendant for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An injunction prohibiting defendants from further obtaining or using plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4).

Dated: July 30, 2020                 /s/ Phillip C. Rogers
                                     Phillip C. Rogers (P34356)
                                     Attorney for Plaintiff
                                     6140 28th Street SE, Suite 115
                                     Grand Rapids, Michigan 49546-6938
                                     (616) 776-1176
                                     ConsumerLawyer@aol.com